UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

No. 94-40741
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM BONNIE FRY,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

(April 25, 1995)

Before SMITH, EMILIO M. GARZA, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

I.

Pursuant to a plea bargain, William Fry pled guilty to possession of firearms by a felon under 18 U.S.C. § 922 (g)(1). The presentence report (PSR) stated that Fry's crime carried a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3) because he had a prior felony conviction for involuntary manslaughter and because one of the firearms involved in the instant offense was a machine-gun. The PSR further recommended a one-level enhancement in the offense level under section 2K2.1(b)(1)(a) because the offense involved three firearms and a three-level reduction for acceptance of responsibility under section 3E1.1(a),(b)(1) & (b)(2). Based on a total offense level of 20 and a criminal

history category of III, Fry's guideline imprisonment range was 41 to 51 months.

In his written objections to the PSR and at the sentencing hearing, Fry argued, *inter alia*, that his base offense level was incorrectly calculated because his prior state-court conviction for involuntary manslaughter was not "a crime of violence" under 2K2.1(a)(3), and because he did not know that one of the weapons in his possession had been altered so that it could fire automatically. The district court overruled Fry's objections, and sentenced him to a term of imprisonment of 41 months, a three-year term of supervised release, and a $50 special assessment.

On appeal, Fry contends that he should be allowed to withdraw his guilty plea because of ineffective assistance of trial counsel and repeats his arguments regarding the calculation of his base offense level. We affirm.

## II.

Fry first argues that he should be allowed to withdraw his guilty plea, which he asserts was unknowing and involuntary because his trial attorney 1) erroneously informed him that the district court had denied his motion to suppress and 2) provided flawed advice regarding the consequences of his plea. Fry concedes that "[m]any of [his] assertions concerning ineffective

assistance of trial counsel were not, and could not, be raised before the trial court."[1]

"[A] claim of ineffective assistance of counsel generally cannot be addressed on direct appeal unless the claim has been presented to the district court; otherwise, there is no opportunity for the development of an adequate record on the merits of that serious allegation." *United States v. Navejar*, 963 F.2d 732, 735 (5th Cir. 1992). Thus, if an ineffective-assistance claim is raised for the first time on appeal, this court will reach its merits only "in rare cases where the record [allows the court] to evaluate fairly the merits of the claim." *United States v. Higdon*, 832 F.2d 312, 314 (5th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988). This is not one of those rare cases.

The record is not adequately developed for this court to review Fry's assertions of ineffective assistance. Fry's reliance on *United States v. Santiago*, 993 F.2d 504 (5th Cir. 1993), to support his contention that this court should remand for an evidentiary hearing on his ineffectiveness claims, is misplaced. *Santiago* is an appeal from the denial of the defendant's motion to vacate sentence under 28 U.S.C. § 2255. Accordingly, this court should decline to address the matter on

---

1. Appellant's Br. at 12. Although Fry sent a letter to the district court complaining of his attorney's performance, the letter did not raise the suppression motion issue. Therefore, counsel's written response in the district court to Fry's allegations is not adequate to address all of the aspects of the ineffectiveness claims raised on appeal.

direct appeal, without prejudice to Butler's right to raise it in a section 2255 proceeding. *See Higdon*, 832 F.2d at 314; *see also United States v. Bounds*, 943 F.2d 541, 544 (5th Cir. 1991) (claims of ineffective assistance can be resolved on direct appeal only when the record provides substantial details about the attorney's conduct).

## III.

Next, Fry challenges, as he did in the district court, the sentence imposed by the district court. "This court will uphold a sentence imposed under the Guidelines so long as it is the product of a correct application of the Guidelines to factual findings which are not clearly erroneous." *United States v. Jackson*, 22 F.3d 583, 584 (5th Cir. 1994). The district court's findings of fact are reviewed for clear error, and its determination of legal principles is reviewed *de novo*. *Id*.

Fry argues that the district court incorrectly calculated his base offense level under U.S.S.G. § 2K2.1(a)(3). That section provides for a base offense level of 22 "if the defendant had one prior felony conviction of either a crime of violence or a controlled substance offense, and the instant offense involved a firearm listed in 26 U.S.C. § 5845(a)[.]" A machine-gun is a firearm listed in section 5845(a). Fry does not dispute that he possessed a "machine-gun" for purposes of section 5845(a); rather, he contends that section 2K2.1(a)(3) should be read to imply a scienter requirement and asserts that he did not know that the gun in question had become a machine-gun by alteration.

4

Whether knowledge is required under section 2K2.1(a)(3) is a question of first impression in this court. However, this court has addressed a similar argument in the context of a neighboring guideline section. In *United States v. Singleton*, 946 F.2d 23, 25-27 (5th Cir. 1991), *cert. denied*, 502 U.S. 1117 (1992), this court held that an upward adjustment could be assessed under section 2K2.1(b)(1) against a felon who possessed a stolen gun whether or not he knew the gun was stolen. The *Singleton* court noted that "[t]he guidelines drafters have been explicit when they wished to import a *mens rea* requirement." *Id*. at 25. The court reasoned that because the neighboring sections of the guidelines contain a *mens rea* requirement, and because statutory sections are to be construed as coherent wholes, the drafters did not intend to include a *mens rea* requirement in section 2K2.1(b)(1). *Id*.

Similarly, the language of section 2K2.1(a)(3) makes no reference to the defendant's mental state. The section is plain on its face and should not, in light of the apparent intent of the drafters, be read to imply a scienter requirement. *See Singleton*, 946 F.2d at 25. The cases cited by Fry, *Staples v. United States*, 114 S. Ct. 1793 (1994), and *United States v. Anderson*, 885 F.2d 1248 (5th Cir. 1989) (en banc), are inapposite because they deal with convictions for strict liability crimes rather than with strict liability sentencing enhancements. *See Singleton*, 946 F.2d at 26.

5

Fry also argues that his prior state-court conviction for involuntary manslaughter[2] was not a "crime of violence" under section 2K2.1(a)(3). Application note 5 of the Commentary to section 2K2.1 indicates that "crime of violence" is defined in U.S.S.G. § 4B1.2. Section 4B1.2 defines crime of violence as:

> any offense under federal or state law punishable by imprisonment for a term exceeding one year that--(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). Application note 2 of the Commentary to section 4B1.2 states that "crime of violence" includes "murder, *manslaughter*, kidnapping, aggravated assault, forcible sex offenses, robbery arson, extortion, extortionate extension of credit, and burglary of a dwelling."

Thus, the drafters of the guidelines clearly indicated that manslaughter was to be considered a "crime of violence." Since the commentary to section 4B1.2 makes no distinction between voluntary and involuntary manslaughter, we hold that both are included. *See United States v. Payton*, 28 F.3d 17, 19 (4th Cir.) (holding that previous involuntary manslaughter conviction constituted a crime of violence under the Guidelines), *cert. denied*, 115 S. Ct. 452 (4th Cir. 1994).

---

2. According to the PSR, Fry, who was driving while intoxicated, ran five vehicles off the road before causing a head-on collision and killing the passenger of the car he hit.

In addition, the record indicates that the conduct which formed the basis for Fry's previous conviction, causing the death of another while driving under the influence, was clearly "conduct that present[ed] a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2 (1)(ii).  Thus, the district court's ruling that Fry's previous conviction constituted a "crime of violence" was not error.

## IV.

For the reasons given above, the judgment of conviction and sentence imposed by the district court are AFFIRMED.